Good morning. Good morning, Your Honor. Thank you. May it please the Court, my name is Scott Street. I represent the plaintiff, the appellant, Pleasanton Police Officer Pete McNeff in this case. I know I have 15 minutes. I would like to reserve five of those minutes for rebuttal. All right. I'll try to help you out by reminding you, but keep your eye on the clock as well, please. I will. And Your Honor, actually, I may not even use all of those first 10 minutes because what happened here, what happened below in the district court was, in my experience at least, unprecedented. A dismissal with prejudice of a First Amendment retaliation claim based on an argument that the defense did not make under 12b-6, based on an issue, causation, which under subtle law is supposed to be an issue reserved for the jury, the trier of fact, and based on a case, which I know Judge Bress will know well, Boquist v. Courtney, which actually reversed the very type of order that the district court was about to enter on the very same grounds that the district court, the causation issue that the district court was ruling. So, Your Honors, we believe that is clear error. It was done, essentially, sua sponte, and we would like the court, we would ask the court to remand this case back to the district court, either with instructions to allow the case to deny the motion to dismiss and allow the case to proceed into discovery because the allegations of the Second Amendment complaint, if you read pages three to five, pages 20 through 22 of our excerpts of record, contain detailed allegations of fact about three adverse employment actions that we were taken as a, in response to Officer McNeff's protected political activity. Namely, he attended a political rally, a peaceful political rally, while on his own time, wearing civilian clothing on January 6, 2021, as many Americans did for whatever reason, and we allege that the actions, that his activity was a substantial or motivating factor for the three adverse employment actions that were taken against him. So what do we make of the arbitrator's decision in this regard? Because, as I understand it, the theory before the arbitrator was he was fired for social media posts. And that's the, it proceeded to an arbitrator's decision based on that assertion. And the opinion says he was fired because of social media posts, and the arbitrator's opinion is entitled to res judicata effect. And now you're saying, no, no, no, it was really the rally and all these other things happened afterwards. So I guess my question is, and I think maybe it was what was troubling the district court is, what do we make of the arbitrator's decision that basically says this adverse employment action was taken because of the media posts? Well, Judge Thomas, that's, that is, that's what the police department in the city argued in the arbitration, that he was, they fired him. They took that adverse employment action supposedly for those reasons. And then Officer McNeff challenged that decision and the arbitrator held that the city did not have good cause to fire him. Good cause under that. Correct. And we don't have the, all of the arbitration documents unless I missed them in the record, but did the grievance say I was fired because of the, my participation at this rally? Well, the grievance is not in the record, Your Honor. I know, that's why I'm asking you. I didn't handle it. So, and it wasn't addressed by the, by the district court's opinion here. So I guess we're trying to read tea leaves. I don't believe that the grievance, I don't believe that the challenge to the termination decision was based on Officer McNeff's political activity. And he certainly could not raise that argument as a grounds for. Well, sure he could. Well, as a, as a matter of, let me put it this way. Here, here's my, and I don't know the answer to the question, but generally speaking, if, if you're taking a contrary position, even in a, in a arbitration to the one you're asserting here, you would be a stop from doing that. And also the arbitrator's decision is raised judicata and says he was fired, he was fired because of social media posts, and that was wrong. So that's why I'm struggling here to see, do you have the right now in district court to go and say, no, there was this other reason he was fired, not the one that we tried in arbitration? Well, that's my concern. And I haven't, I haven't come to rest on it yet. That's what I'm raising it just so you can respond. It's an interesting question, Your Honor, because having not briefed it or thought about it below. And you weren't, and I recognize you weren't the arbitration attorney. It is. Having not been the arbitration attorney, I'm, I'm, I'm, I'm thinking sort of on my feet now. I do know from my understanding of the arbitration proceeding, and let me just tell you, Your Honor, why we actually included a reference to the arbitration, to the arbitrator's decision. One is simply so the, the district court could have a full understanding of what happens.  I mean, it was an, it was an important part of the record. Correct. And also, but also, Your Honor, the reason we included it is because we alleged in the, in the Second Amendment complaint that the, the arbitrator's claims were, if anything, could be used against the defense here. Because what they, what they did is, what they show is that the, and I'm focused on the police, former police chief now, Chief Swing, did not have a good faith basis. So addressing the issue that the district judge ---- Now you won the arbitration. I see. So there was no good faith basis determined. Correct. And so what, and how that, how that connects with our First Amendment retaliation claim, Your Honor, is that, that, that is the evidence that we are using. What we are saying provides essentially a pretext. We're saying that Officer McNeff was retaliated against. They tried to fire him for these social media posts, not in good faith because they believe, they really believe that they violated the city policy, but in bad faith, as the arbitrator found, as a pretext because of this prior protected political argument. No, I understand your theory. It just, the arbitration proceedings complicated for me because it seems to me you were probably obligated to raise your current, or not you, just your client, was they were obligated to raise it in the arbitration proceedings if that was the reason for termination or the adverse employment action. And two, if the arbitrator says this was the reason for firing, I'm not sure why that's not res judicata on causation. Well, I think, Your Honor, it's, I don't think the arbitrator issued a decision that this was the reason. No, he says that. I'm not sure it was contested or not because I don't have the whole proceedings in front of me. Well, yeah, I think it's — I'm just, and I understand. I'm hitting you cold with this. I completely, I didn't like it when I was standing in your shoes. But it was a concern, and I wanted to be able to address it. Sure. And I think it's, you know, obviously, Your Honor, I mean, this is, it's complicated by the fact that these arguments not being raised below and we not having the entire arbitration record. I don't, I don't want to say too much about, I don't want to make too many representations to the court about what happened in that proceeding. I do know that the, the background here, the, the, the protected political activity does, I think it did form sort of the background for the arbitration, the, the, the challenge to the termination, the efforts to terminate Officer McNeff's employment. But, but one thing I do think is important is even setting aside Your Honor's concerns with however this plays out in litigation with the effect of the arbitration decision, effect or non-effect, either vis-a-vis the plaintiff or the defense, there are two other adverse employment actions that preceded the termination decision in which we allege had, had those not happened, there never would have been a termination. There never would have been an arbitration proceeding. And so what we are alleging, and, and those three adverse actions, number one, relieving Officer McNeff of duty. Number two, the social media investigation, which we allege in our complaint was instituted not in good faith on a, based on a belief that some citizen was really complaining, but in bad faith to create a basis to try to fire Officer McNeff. Those are independently actionable, regardless of what the effect of the arbitration proceeding is. So are you, are you alleging retaliation, both because of his attendance at the rally and because of his social media posts? You're saying this, these actions were taken in response to both and you contend both were protected? Yes, Your Honor. Let's assume that, take away the rally, let's say we're just talking about the social media posts. Do you think that you're entitled to damages? The arbitrator said you get to go back to work, come back. And as your theory is, you can also get damages for that in federal district court? I don't think we can get damages for the, for the back pay that Officer McNeff has already been compensated for. No, I mean, I'm talking about other damages. Well, I think there are other damages. I think there are damages to his reputational harm. I mean, Officer McNeff will testify that once these, once he was suspended and once this investigation was launched, his career, even after returning to work, has gone downhill, has changed dramatically. So, and that is at the very least one component of the damages that he will, he will recover. What additional damages? I don't know, because we were again at the pleading stage and in fact, never really had one substantive hearing with the district court on this. I know, I know you wanted to say five minutes, but let me confirm. I understand that Chief Swing is the only issue on appeal that we need to resolve. The other officers in the Mell claim you've dropped from the appeal, right? We, we agreed to drop those and we would, if we returned to the district court, we would focus on the claim against Chief Swing. Yes. And I'll reserve the balance of my time. All right. Thank you. Thank you. Good morning, Your Honors. May it please the court. My name is Nicholas Grether. I am an attorney at Liebert Cassidy Whitmore, representing the defendants appellees in this matter. We respectfully request that this court not partially reverse the district court's order or judgment in this matter. Your, the appellant argues that his first amendment claim against, or retaliation claim, that is, on the first amendment, the first amendment, the first amendment against Chief Swing is adequately pleaded to avoid dismissal under the analysis provided from the district court. We contend that it is not. While there are allegations of adverse employment actions and protected activities or political activities under the first amendment, what's missing is those factual allegations to support an inference of retaliatory animus. Instead of having those factual allegations within the complaint, what you see are repeated statements, Chief Swing's retaliatory animus led to making this decision, led to making that. Those are conclusions. Those are not allegations of, those are not factual allegations. Well, but I mean, there are factual allegations that he attended a rally soon after that, people complained about that. There was an investigation. There was an investigation into his social media accounts and posts, and that then adverse actions followed from that. So is that not enough? Right. I would contend that it is not, because there isn't anything from Chief Swing's perspective other than conclusory allegations that say Chief Swing intended to retaliate against him for these purposes. There is not certain, other than those actions occurring, there isn't that allegation, that factual allegation. Several cases point out when you have those kinds of issues, you see that circumstantial evidence of, say, a board of supervisors criticizing a proposition or other individuals saying, I thought that this speech was repugnant or distasteful. They're not saying, they're not preventing that direct evidence of retaliation, but that is that circumstantial evidence that is typically provided that is missing in this case. Well, it's only on a 12b-6. You know, I mean, we don't, there's a lot that could be uncovered that could support one side or the other on this, but why wouldn't the inferences we would draw from the circumstances be enough under the cases? Well, that's where the allegations where they include the arbitrator's decision come in, as well as previous references to what they've pleaded in the First Amendment. Well, he did plead in the amendment that the Facebook posts were a motivating factor in the retaliation. The district court didn't discuss that. What do we do with that? I mean, there doesn't appear to be any reason for taking the action, right, setting aside the rally, because he had been a good officer during his tenure. Right. And I think what's important to show is that within those factual allegations, there isn't anything in there that shows any animus from Chief Swing about those Facebook posts, rather the complete opposite, choosing to investigate it and choosing not to have the police department investigate it itself. And then that arbitration decision then leads and then reviews those decisions. And it found that these were potential violations of policy that were being alleged. And ultimately the arbitrator found that there were no violations of policy. Well, I guess the challenge a little bit is that some of these things seem kind of related. This isn't a situation where they say, well, he went to the rally, now he's being fired for some other misconduct that has nothing to do with speech or his political views. I mean, the social media posts are kind of of a piece with going to the rally. Except that in one of the posts predated going to the political rally, which was complained of by another officer. And then Officer Batt, who was the real subject of the arbitrator's decision, was the one who had poured over social media accounts or his social, McNaff's, the appellant's social media account, and then found some offensive posts and then sent those in. Right. I think the problem here is that we're at the 12v6 stage, right? He does allege that there were some posts that was the motivating factor in the retaliation and he attended the rally. So he's entitled at this point to reasonable inferences. And so he goes to the rally. Shortly after that, he's placed on administrative leave. Then his six-year-old posts were then dug into, and then he's terminated after that. No history of disciplinary action. So there are inferences there that we can rely on, can we not? I would argue that those inferences are undercut by a number of issues, and most prominently the arbitrator's decision. To clarify, though, he went to the rally and then the next day, or within a couple of days, as it's pleaded in the second amended complaint, there was no action taken against him for his alleged attendance at the rally. Once they, I guess it was mistakenly believed that he was in Washington, D.C. that day, and rather he was in Sacramento, California, and that nothing had occurred that day. So nothing would happen. It wasn't until a number of days later, which was a few days later, I think January 10th, that the anonymous e-mail came in with the complaint about his social media history. How do you think the arbitration helps you? That's confusing me a little bit because he did win there. Sure. What I think is important about the arbitration is that there isn't any evidence that the arbitrator uncovered or that's included in this pleading to show that the arbitrator found that Chief Suing was intentionally or in any other way retaliating against him for his First Amendment activity, rather that he was concerned about violations of policy and the disruption that those posts had caused.  But was retaliation at issue in the arbitration? Again, I don't have the papers. I can't tell. I'm in a similar position where I wasn't the attorney handling it. However, it doesn't appear so from, well, I'm not sure. I mean, to echo Judge Pressley's question, it seems to me, and I quizzed your friend about this, but I mean, in your position, you've got an arbitrator's decision that said he was fired without good cause. And I think that's probably race judicata. Yeah, I mean, the question is, and I asked your colleague, is he also entitled then to bring a 1983 action on top of the arbitrator's decision? I think maybe the answer is yes, and if so, you're past 12b-6.  I think in that argument, it's potentially, it would be, may be reserved for a motion for judgment on the pleadings or once we have a full and complete record on the arbitration. As for race judicata, that's one of the reasons we didn't bring it on that 12b-6. It's not as if we had a previous lawsuit or something that was 100% clear. We also had not been able to enter those documents into the record. Their confidential police officer personnel files would have to, you know, make sure that the court- It's the next stage. Yeah. So if we disagree with you and find that the district court erred in finding his allegations too conclusory to establish a constitutional violation, then do we send it back for the district court to take up the clearly established law prong in the first instance, or do we reach that issue ourselves? Yeah, I mean, I think it probably, in that respect, probably should go back because it does not appear that the district court really analyzed that clearly established law position. Our position would be, given the analysis there, though, that by failing to allege that but-for causation in this situation, you don't have that clearly established right. But I think that would be the appropriate analysis, given Chief Swing's decision-making power and those other issues. What if we assume they had alleged the but-for causation? Do you think that would then violate a clearly established right if the allegations are accepted as true? No. No, we don't think so. In this case, what is the clearly established right of police officers in California must maintain themselves free of bias. There is actually a specific law that requires that findings, sustained findings, which is not this case, but a sustained finding that making an offensive or racial or biased post online would actually be a public record. It can certainly subject officers to discipline. There's no argument that the, other than the motive that is being, I would argue, conclusorily offered by the appellant, that these were in retaliation. There is nothing improper about investigating or placing an employee on leave who is alleged to have engaged in misconduct. I would like to just point to a couple of cases that I believe are helpful to understanding the causation argument. And in a couple of them, Arizona Students Association and the Koala versus Kozla, which were both cited, in fact, by the appellant, those involved Ninth Circuit reversals of orders granting motions to dismiss. What was found was that the district court had ignored evidence in the Arizona Students Association case. It was that other plausible factual allegations, in that case, the Board of Regents had criticized a proposition that the Student Association supported. And so that led to an inference of retaliatory intent. Several regents actually criticized it as well. They allegedly, some of the regents had acknowledged that their decision to change the fee model, there they were arguing about being, losing funding from an opt-in to an opt-out, from an opt-out to an opt-in situation. So they alleged these additional factual allegations that could draw an inference, right? There was no statement that, oh, I'm going to retaliate against this person or this group because of their First Amendment activity, but there were these additional factual allegations where you could draw those inferences. The other, in the Koala versus Kozla case, the, it was in UC San Diego, was an article that was very, allegedly very distasteful that was published. The Student Association passed a media act that essentially eliminated its funding. Then the student newspaper sued. When they had the Ninth Circuit overturn that order on the motion to dismiss, it was noted that the allegations were ignored, such as that the chancellor called that publication cruel and repugnant, and that the response by the Student Association was to cut their funding and retaliatory at that point. So there were those specific factual allegations made to connect those two things together. And we don't know what the chief said or wrote because there's been no discovery in this case. It's, you know, maybe in another case somebody has managed to get their hands on something like that, and that would be even more helpful. But how do we know here what his views were when this is just on the pleadings? Well, right, but there are ways to plead that in circumstantial evidence if you have some way to plead that, which the appellant has not thus far. What I believe the district court was correct on, including that these are conclusory allegations, is by simply declaring he had a retaliatory animus without any factual allegations to support that. Well, the temporal proximity really helps the plaintiffs, right? And so that's why I asked you about the inference that can be reached. Yes, and I agree that the temporal proximity is certainly a factor. However, all the cases also require something else, right? Some other factor beyond merely temporal proximity. As they noted, you know, it can be a few days, it can be even years, there can be that temporal proximity analysis. But without something more, without some other factual allegation, that appears to fall short under those cases. Lastly, I would just point out the appellant cited a statement of recent decision before the ultimate ruling from the district court, the NRA v. Volo case. Again, very similar allegations to the other Arizona students case and the Koala case where there weren't those inferences drawn in favor of the plaintiff in those cases. But in fact, in the Volo case, the NRA had alleged that she had met with executives and that she had allegedly coerced them or threatened them with enforcement actions based on their insurance products that were related to the NRA and that if they stopped carrying those products, that they would no longer pursue those actions. So there were those other factual allegations rather than the mere recitation of the elements. And for those reasons, we would ask that the Ninth Circuit and your honors uphold the order to dismiss it. Thank you. Thank you, counsel. Your honors, just a few final points to sum up. As many courts have recognized in these cases, First Amendment retaliation cases, it is hard to plead, certainly in good faith, the defendant's state of mind. We did do that here, but that is why the pleading of facts, temporal proximity, pretexts are especially important in these cases. And that's what we have here, what we alleged. Pages three through five of our complaint, a police officer who has never been disciplined for anything is suddenly, within a matter of weeks of engaging in protected political activity, is relieved of duty, has his entire social media history searched, and has his boss, the police chief, try to fire him over the recommendations of a law firm and, as the arbitrator eventually found out, as Judge Thomas pointed out, in bad faith, not based on a good faith belief that he violated a city policy. So under subtle law, your honors, I believe that is sufficient, sufficient factual allegations to state this claim. I believe, quite frankly, that's why the defense did not move to dismiss that claim below under 12b-6. And we believe that claim should proceed into discovery. Two other points regarding the qualified immunity analysis. Again, this wasn't raised specifically with respect to Chief Swing on 12b-6, but with respect to qualified immunity. Clearly established law. I would just direct your honors to page 38 of our opening brief. A number of cases, including cases that have recognized that it is clearly established, at least as of 2015, if not earlier, probably under this court's decision in Coastalter, that taking action, adverse employment actions, termination, suspension, transfer, relief of duties, in response to an employee's protected political activity, is clearly established. If it didn't reach that prong of the qualified immunity analysis, do we send it back to give the district court the first crack at it? Well, I think you could send it back, your honor. I do think it's, and again, we're reading tea leaves here, I will say that the record below was, in an earlier motion to dismiss, the defense had raised a qualified immunity argument, and the district court had asked them to more meaningfully engage in the clearly established law side of that analysis if they brought that motion again. They did not do so. So the fact that the district court did not address that issue, even in the alternative, suggests to me that she would have recognized what all of the law we've cited on page 38, that that right is clearly established, and so she went the other way and said, well, it's not sufficiently alleged. So I think that your honors could, in the interest of trying to expedite this, take on that issue and decide that, but you could... People are always urging us to do that, and the district court said, why did you take that on? I do understand that, and I'm always interested in trying to push my client's cases through as efficiently as possible. So if we need to address that below, that would be fine, but I think your honors would be welcome to... I gather from your argument, your client's back at work? Yes. And at Pleasanton? Yes. And what does your client... I mean, I don't want to pry on anything, but I'm curious as to where you see the resolution of this case. What does he want? If you can say. I don't want to... I don't want you to say anything, attorney-client privilege, but... I think it's hard to say. By the way, my client would have been here but for being at work, so I wish he could have been here. I think for Officer McNeff, your honor, what he would like to see here is vindication and really, he wants to shed a light on what happened and why, and not only recover the reputational damage for the reputational harm he suffered, but ensure it doesn't happen to anybody else. The reason I ask is, listening to both of your arguments today, I wonder whether or not this is an appropriate case for our circuit mediators to talk to you about. And I don't expect you to respond today, but that was the reason for my question. Thank you. Thank you. Thank you very much, both sides, for your argument. The matter is submitted. And that concludes this morning's argument calendar and our argument calendar for the week as well. We're adjourned. All rise.
judges: THOMAS, NGUYEN, BRESS